UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*
SHERRI PAULEY, ET AL,            \*
       Plaintiffs   \*   No: 3:01CV02224 (RNC)
                                     \*
VS                               \*
                                       \*
TOWN OF ANSONIA, ET AL,          \*   October 11, 2004
       Defendants   \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF DAVID PAULEY

     Deposition of DAVID PAULEY, taken on behalf of the Defendants in the above-entitled cause before Michele J. Brasley, LSR, Notary Public in and for the State of Connecticut, on October 11, 2004 at the offices of Howd & Ludorf, 65 Wethersfield Avenue, Hartford, Connecticut, commencing at 1:05 o'clock p.m. pursuant to Notice.

      REPORTED BY:  Michele J. Brasley, LSR
          NIZIANKIEWICZ & MILLER
            972 Tolland Street
  East Hartford, Connecticut  06108-1533
            (860) 291-9191
        FAX:  (860) 528-1972.

Exhibit D

1  knowledge?

2  A    I don't know what was being said in the Hoffman
3  residence.  I had a police officer show up in my back yard
4  on a day that they called saying the music was too loud.
5  This Officer unannounced, showed up in my back yard.  I was
6  in the middle of the hill, one hundred feet away from my
7  radio that was playing on the back deck.  And that Officer
8  said to me, "This is what he called for?"  I said, "what?"
9  "You people, again? We have a call stating that your music
10 is too loud."  "Officer, clearly you know it's not too
11 loud."

12 Q    Mr. Pauley, is it fair to say that the Hoffman's
13 called the police department on numerous occasions with
14 complaints of noise emanating from your house or yard?  Is
15 that correct?

16 A    That is correct.

17 Q    Is it also fair to state that you or your wife has
18 made numerous phone calls to the police department
19 complaining of noise coming from the Hoffman residence?

20 A    That is correct.

21 Q    It is also fair to say that the police department,
22 on each such occasion responded to the calls by way of
23 showing up at your residence?  Is that correct?

24 A    That is correct.

25 Q    I apologize for the pause in time, however, I'm

```
 1   problems with the Hoffmans; is that correct?
 2        A    That is absolutely correct.
 3        Q    And the problems began right after you moved in in
 4   1997; is that correct?
 5        A    Yeah.
 6        Q    And they didn't end until you moved out.  When did
 7   you move out?
 8        A    When we had the good sense to run for our lives.
 9        Q    And at the time you had good sense to run for your
10   lives, you were having problems with the Hoffmans up until
11   that time; is that correct?
12        A    And Ansonia police department, as well.  They were
13   arresting people.
14        Q    Mr. Pauley, please answer my question.  Up until
15   the time you moved out, you were having problems with the
16   Hoffmans; is that correct?
17        A    I was having problems like any family would in the
18   neighborhood with all the situations one would have.  When I
19   had my land surveyed, I got to know my neighbors in the back
20   property.  And that was human enough.  And we got to be
21   friends.  And I got to know people across the street.  And I
22   got sixteen letters saying that the Pauley's were decent
23   people.  And to answer your questions, if you were to ask me
24   questions less pointed at the Hoffmans or the police
25   department.  I don't know how to answer some of your
```

1  questions.
2       I'm not hostile, but in the same capacity, Ansonia
3  bears as much responsibility as the Hoffmans.  In my eyes,
4  more.  They handcuffed me in front of my children.
5     Q   Mr. Pauley, my question is, up until the time you
6  moved out of the 10 Adonte house, were you having problems
7  with the Hoffmans?
8     A   Absolute.
9          MR. DEMERCHANT:  Please mark this.
10 (Defendant's Exhibit B for Identification: 12 page
11 document.)
12 BY MR. DEMERCHANT:
13    Q   I have had what has been marked as Defendant's
14 Exhibit B for identification purposes.  It is a 12-page
15 document.  I'm going to be showing it to Ms. Engstrom.
16 (Handing.)
17    Q   Mr. Pauley, I'm showing you what has been marked
18 as Defendant's Exhibit B for Identification.  Mr. Pauley,
19 have you seen that document before coming here today?
20    A   No.
21    Q   If you can, please, take just a few moments to
22 look through that document.
23 (Whereupon, a recess was taken at 2:15 o'clock.)
24 (Whereupon, the deposition resumed at 2:24 o'clock.)
25 BY MR. DEMERCHANT:

1   A   Hundred thousand dollars, whatever.  He had legal
2   problems.  Her daughter, Tamara, a police officer, and she
3   told Sherrie and I this.
4   Q   That Mrs. French had problems --
5   A   And her mother and brother.
6   Q   And Mr. Wilson had problems with the Hoffmans; is
7   that correct?
8   A   Quite a few people had problems with the Hoffmans.
9   Q   But as you sit here today, do you have any
10  documents, any evidence, that the Ansonia Police Department
11  had notice that whatever problems were occurring, that they
12  were untrue and false?
13  A   Boy, that is loaded.  Repeat that question again,
14  please?
15  Q   As you sit here today, do you have any documents
16  or information that the Ansonia Police Department had notice
17  that these complaints that were made by the Hoffmans were
18  untrue or false?
19  A   It is all he said, she said stuff.  Unless the
20  police officers rolled up on the scene, and as you can see
21  in these documents, they did, saw no noise, heard no noise,
22  but whatever.  And they stated their claim that the Pauleys
23  were in fact not bad people.  I don't know how else to
24  answer that.
25      Now, the question before that, we didn't get

1  educated then me was saying something like that.  Who has
2  got the money for it?  Who is financing this?  I don't have
3  the money to sue people.  I had to borrow three thousand
4  dollars to bring this action against the Ansonia Police
5  Department from my dad.
6      Q    Okay.  So, it's your contention you didn't bring a
7  civil action against the Hoffmans because you couldn't
8  monetarily afford it?
9      A    First of all, I don't want to prosecute myself
10 here today by incriminating myself with a wrong answer to
11 your questions.  I would like to sue the Hoffmans.  If
12 there's a way to sue the Hoffmans for what they have done to
13 me, I would like to sue the Hoffmans.  I think it's tragic
14 what they have done to Ski Taylor, Star, Mark, Sherrie and
15 myself, yeah.  But I don't have the money to sue anyone.  I
16 just got through saying I borrowed this money three years
17 ago from my dad, my wife did.
18     Q    Now, you are claiming this case is against the
19 Defendants and it is an action for the denial of equal
20 protection of the laws.  What is your understanding of how
21 the Defendants violated your equal protection rights?
22     A    By treating me and my family differently than they
23 did everybody else.  You know, there's probably five good
24 answers to that question.  I don't know if I have one good
25 answer.

1    Q    They treated you different from who?

2    A    From all the other residents in town.  They made
3  me move, or I would have been arrested many more times.
4  They were dubbing me a troublemaker, and my family a
5  nuisance.

6    Q    What other residents?

7    A    All the other residents of Ansonia.  I don't see
8  all those people arrested on a day-to-day basis, or police
9  officers at their house because of an irate neighbor or
10  anything like that.  They did not come to my defense, my
11  wife's defense or my children's defense.

12    Q    Well, I'm trying to clarify it in my mind.  You
13  are saying that you were treated differently from all
14  residents of Ansonia because the officers didn't go to their
15  house and arrest them for their neighbor's disputes.  I'm
16  trying to understand how you are saying.

17    A    I don't know if I can qualify a better answer for
18  you, Dan.  I was arrested, my family was arrested.  We were
19  forced to move to stop the arrests from occurring.  We had
20  the police department, forty some odd times in four years at
21  my house.

22       My daughter's birthday party, my brother on the
23  steps told by two police officers not to get involved or he
24  could be arrested.  And his contention is it is not allowed.
25  It is a little girl's birthday party.  Why don't you do

1  something with these people next door? And I had to tell my
2  brother to be quiet for fear of him being arrested.
3      Q   Mr. Pauley, you made a claim that you have been
4  treated differently from all residents of Ansonia?
5      A   All people in the State of Connecticut.
6          MS. ENGSTROM:  Wait until he finishes the
7  question.
8  BY MR. DEMERCHANT:
9      Q   I'm asking you, in your understanding, how were
10 you treated differently from all other residents of Ansonia
11 by the Ansonia Police Department?
12         MS. ENGSTROM:  He's answered the question.
13 He just spent about five minutes answering it, and he's
14 given you specific examples.
15         MR. DEMERCHANT:  Is that an objection to
16 form?
17         MS. ENGSTROM:  Yes.  And I'm going to
18 instruct you not to answer, unless you have anything more
19 you want to add.
20         THE WITNESS:  Well, let me hear the question
21 again.
22         MS. ENGSTROM:  He's just repeated the same
23 question.  Do you have anything more in terms of being
24 treated differently?
25         THE WITNESS:  My dad went to the Mayor, my

100

STATE OF CONNECTICUT

I, Michele J. Brasley, LSR, a Commissioner duly commissioned and qualified in and for the State of Connecticut, do hereby certify that purusant to notice there came before me on the 11th day of October, 2004 the following named person, to wit: DAVID PAULEY, who was by me duly sworn to testify to the truth and nothing but the truth, that he was thereupon carefully examined upon his oath and his examination reduced to print under my supervision, that this deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney nor counsel for nor related to nor employed by any of the parties to the action in which this deposition is taken. And further that I am not a relative or employee of any attorney or counsel employed by the parties.

In witness thereof, I have hereunto set my hand and affixed my seal this 11th day of November, 2004.

_____
Michele J. Brasley, LSR

My Commission Expires:
December 31, 2008.

Exhibit D