UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERRI PAULEY, ET AL | : |
|     Plaintiff | : |
| | :   Case No. 3:01CV02224 (CFD) |
| VS. | : |
| | : |
| TOWN OF ANSONIA, ET AL | :   MARCH 8, 2005 |
|     Defendant | : |

**PLAINTIFF'S OBJECTION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The plaintiffs, SHERRI and David Pauley, object to the defendants' motion for summary judgment on the plaintiffs' complaint and file this memorandum in support of their objection.

**I.    Preliminary Issue**

_____The plaintiffs requests the court's permission to file this pleading one day late. Plaintiff's counsel has consulted with opposing counsel and has received no objection to this request.

**II.    Background and Facts**

Plaintiffs moved into their home on Adanti Court in Ansonia in July 1997 (Complaint ¶9, Pl. Exb. 1 - dep. at 12). Their home was one side of a townhouse/duplex which shared a common wall, the other side being occupied by the Hoffman family (Complaint ¶9). Problems with the Hoffman's started immediately after the Pauley's took possession of their new home (Complaint ¶10).

-1-

Mr. Hoffman went over to the Pauley residence and complained to Mr. Pauley that the noise coming from his home was "outrageous" (Pl. Exb. 2 - dep. at 26). Ten minutes after Mr. Hoffman was at the Pauley residence, the police arrived based on a complaint by Mr. Hoffman (Pl. Exb. 2 - dep. at 26).

The Hoffman's continued to make complaints to the Ansonia Police Department concerning various issues regarding the Pauley household (Pl. Exb. 3). The complaints included excessive noise, a property line dispute, watering the lawn too late in the evening, dog barking, and child abuse (Pl. Exb. 3). On many of these occasions, when the police responded they determined that the "loud noises" complained of by the Hoffmans were actually children playing, Mrs. Pauley calling her children in for the evening, or the result of a child's birthday party being held in the yard at 3:00 p.m. - in the afternoon (Pl. Exb. 3). Many times when the police responded to the Hoffmans' complaints, they arrived to find music playing at an appropriate level (Pl. Exb. 3). The Pauley's complaints regarding the Hoffmans' were mainly about the Hoffmans' pounding on their walls (Pl. Exb. 3). Mrs. Pauley actually had to call the police in order for them to retrieve her daughter's ball which had accidentally gone over the fence that the Pauley's had installed (Pl. Exb. 3). Mrs. Pauley also called on several occasions to report Mr. Hoffman's abuse and profane language directed at her and her family (Pl. Exb. 3).

The Pauley's were at a loss as to how to live in duplex where the neighbors

obviously didn't like children or animals.  They even purchased a "noise meter" at their own expense ($370) to ensure that their household noise was reasonable (Pl. Exb. - dep. at 33).  The complaints by the Hoffmans, many of them unfounded, continued (Pl. Exb. 3).

Toward the end of the first year that the Pauley's resided next to the Hoffmann, Mr. & Mrs. Pauley went to the Ansonia police department to file a written complaint against the Hoffmans for their false allegations.  (Pl. Exb. 1 - dep. at 24). They were met by Officer Zalinsky who told the Pauleys that they didn't really want to file a complaint against their neighbors because it would 'snowball'.  The Pauley's requested a written complaint be filed but Officer Zalinsky did not file a written complaint (Pl. Exb. 1 - dep. at 27; Pl. Exb. 5; Pl. Exb. 6).

Mrs. Pauley went a second time to the Ansonia police department to file a written complaint against the Hoffmans for their false allegations.  Again, Officer Zalinsky refused to file a written complaint against the Hoffmans as requested by Mrs. Pauley (Pl. Exb. 1 - dep. at 32).

Mrs. Pauley went a third time to the Ansonia police department to file a written complaint against the Hoffmans for their false allegations (Pl. Exb. 1 - dep. at 40).  Again, Officer Zalinsky refused to file a written complaint against the Hoffmans as requested by Mrs. Pauley (Pl. Exb. 1 - dep. at 42).

During one of these interactions with Officer Zalinsky, Mrs. Pauley recalls

Officer Zalinsky stating she didn't have any grounds to file a report.  (Pl. Exb. 1 - dep. at 41).

Mrs. Pauley, through her attorney at the time, requested that a written complaint be filed regarding the false allegations made which resulted in the Department of Children and Families investigating the Pauley's for physical neglect (Pl. Exb. 1 - dep. at 42-43), a claim that was not substantiated (Pl. Exb. 4).  Officer Zalinsky refused to take the complaint stating he "didn't want to get involved".  In fact, he told Mr. Pauley that the best advice he could give Mr. Pauley was to move (Pl. Exb. 2 - dep. at 62).

Shortly after October 2000, Mrs. Pauley met with Chief Hale of the Ansonia Police Department (Pl. Exb. 1- dep. at 68).  She provided him with a letter she called "A Living Nightmare" (Pl. Exb. 1 - dep. At 69).  During this meeting with Chief Hale, Mrs. Pauley discussed how she was refused the right to file written complaints against the Hoffmans (Pl. Exb. 1 - dep. at 74).  In response, Chief Hale told Mrs. Pauley that the Hoffman's had to make false allegations a few more times before he could do anything (Pl. Exb. 5 at 10).

Mrs. Pauley also made complaints to the mayor of Ansonia regarding the police's unwillingness to do anything to intervene (Complaint ¶13, Pl. Exb. 2 - dep. at 65) including allowing them to file a written complaint.

Eventually, the Pauley's, who were subject to false complaints, harassment,

and intimidation, were forced to sell their home in Ansonia and move to another town (Complaint ¶16).

### III.    Law and Argument

####       A.    Summary Judgment Standard

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue of material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.  The courts hold the movant to a strict standard." DHR Construction Co., Inc. v. Thomas J. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980).

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the

record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party

opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds

could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

## B.    Plaintiff's First Amendment Rights Were Violated by the Defendants.

The First Amendment to the Constitution guarantees the right of a citizen to petition the Government for a redress of grievances. U.S. Const. Amend. I. "... the First Amendment protects the right of an individual to speak freely,...and to petition his government for redress of grievances." Minnesota State Board of Community Colleges v. Knight, 465 U.S. 271, 286 (1984) quoting Smith v. Arkansas State

Highway Employees, 441 U.S. 463, 464 (1979).  "Certainly the right to petition extends to all departments of the Government.  The right to access to the courts is indeed but one aspect of the right to petition."  California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972.)  The right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the bill of rights."  See United Mineworkers of America, District 12 v. Illinois State Bar Association, 389 U.S. 217 (1967).

The plaintiffs' have alleged that the defendants violated their constitutional rights when they denied the plaintiffs the right to file a written complaint with the Ansonia police department.  The relevant portion of the complaint states:

> 12.   On numerous occasions, the Pauley's requested relief from the Ansonia Police Department, requesting, in particular, that the Hoffmans be arrested for filing false complaints with the police department and other law enforcement authorities.

> 13.    Sherri Pauley made numerous complaints to Defendant Zalinsky to arrest the Hoffmans on charges of filing false police reports.  Sergeant Zalinsky refused to take the complaints or to otherwise investigate Ms. Pauley's complaints, saying, on more than one occasion, that such an investigation would only fuel further bitterness by the Hoffmans. The Pauleys also made complaints to the mayor of Ansonia that they were being driven from their home by vindictive neighbors and that the police department was unwilling to do anything to intervene.

> 14.    Upon information and belief, the Ansonia Police Department had actual notice that the Hoffmans had a history of making reckless and untrue allegations against neighbors as a means of trying to exert control over the conduct and behavior of their neighbors. This history was known to the Ansonia Police Department, Chief Hale and Sergeant Zalinsky well before the

-9-

Pauley's ever took possession of their property on Adanti Circle.

15.     Upon information and belief the Ansonia Police Department has a policy, practice and custom of not taking civilian complaints regarding the filing of false police reports in the context of neighborhood disputes. This policy was endorsed and ratified by defendant Hale.

The defendants, by obstructing the plaintiffs' rights to petition the government of Ansonia for redress of their grievances, violated the plaintiffs' constitutional rights.

### C.  The Plaintiffs' Have Established the Defendants Violated 42 U.S.C. §1983

"The terms of §1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant deprived him of a right secured by the "Constitution and laws" of the United States.  Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'  This second element requires that the plaintiff show that the defendant acted 'under color of law.'" Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

The plaintiffs have sufficiently alleged a violation of their First Amendment right to petition the government for redress of their grievances.  The town of Ansonia, including the police department, denied the plaintiffs their right to file a written complaint against their neighbors basing their denial on their policy, practice and custom of not taking civilian complaints in the context of neighborhood disputes.

-10-

### D.  The Town of Ansonia is Liable as a "Person" Within the Meaning of §1983

A municipality cannot be held liable for the acts of its officers in an action under §1983 based solely on the doctrine of respondeat superior.  Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978).  However, a municipality can be held liable where "the execution of a government's policy or custom" caused the constitutional injury.  Monell at 694.

To clear this hurdle, the plaintiff has three ways to meet the Monell policy or custom requirement.  First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity."   Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989).  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  Pembaur v. City of Cincinatti, 475 U.S. 469, 480-481 (1986).

"Where plaintiffs allege that their rights were deprived not as a result of the enforcement of an unconstitutional official policy or ordinance, but...by a city employee's single tortious decision or course of action, the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself. Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers....Thus, even a single action by a decisionmaker who "possesses final authority to establish municipal policy with respect to the action ordered... is sufficient to implicate the municipality in the constitutional deprivation for the purposes of §1983." Amnesty America v. Town of West Hartford, 361 F.3d 113, 125 (2nd Cir. 2004). " "While allowing the municipality to be held liable on the basis of mere delegation of authority by a policymaking official would result in *respondeat superior* liability, allowing delegation, without more, to defeat municipal liability would contravene the remedial purposes of §1983. Therefore, §1983 plaintiffs may establish that the city is liable for their injuries by proving that "the authorized policymakers approve[d] a subordinate's decision and the basis for it." City of St. Louis v. Praprotnik, 485 U.S. 112,127, 108 S.Ct. 915,99 L.Ed. 2d 107 (1988) (plurality opinion)." American Amnesty at 126. "Thus, when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the

subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority.  One means of doing so, of course, is to establish that a policymaker ordered or ratified the subordinates' actions."  <u>American Amnesty</u> at 126.

All the defendants were aware of the Pauley's request to file a written complaint against their neighbors.  The Pauleys had spoken to both the mayor of Ansonia and the Chief of Police about their request to file a written complaint, which had been refused by Officer Zalinsky.  Chief Kevin Hale states in his affidavit (Def. Exb. K at #5-6) that he is "responsible for setting, maintaining, and enforcing the rules, regulations, procedures, policies, practices and customs of the Ansonia Police Department and that he is "responsible for final policymaking on matters pertaining to the Ansonia Police Department".  Chief Hale's ratification of Officer Zalinsky's actions, of which Chief Hale was aware of all three requests of the Pauleys to file written complaints, constitutes an act by the town of Ansonia.

### E.    <u>The Defendants Are Not Entitled to Immunity</u>

The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S.800, 818 (1982).  "In evaluating a motion for summary judgment on the basis of qualified immunity, we

-13-

must as a threshold matter inquire whether, construing the facts most favorably to the plaintiff, "the facts alleged show the officer's conduct violated a constitutional right"....If so, we must determine whether the right in question was clearly established at the time the violation occurred...We have found that a qualified immunity defense is established when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that this action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2nd Cir. 1998) " Poe v. Leonard, 282 F. 3d 123, 133 (2002).

In order for the defendants to receive the protection of 'qualified immunity', this court would have to determine that (1) no violation of a constitutional right occurred; or (2) if a violation did occur, the constitutional right was "clearly established' meaning it would be clear to a reasonable government actor that his conduct was unlawful in the situation he confronted. Groh v. Ramirez, 124 S.Ct. 1284, 1293 (2004) quoting Saucier v. Katz, U.S. 194, 202 (2001).

The denial of the right of a citizen to petition the Government for a redress of grievances is clearly a constitutional violation..  U.S. Const. Amend. I.

The court in Groh, a case regarding unlawful search and seizure, stated "Given that the particularity requirement is set forth in the text of the constitution, nor reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid.". Groh at 1293.  An analogous situation occurs in this case.

Our U.S. Constitution clearly states the right to petition the government for redress of grievances.

For a municipality and its police officers to decide who gets to file a civilian complaint, and under what circumstances a civilian complaint may be filed, clearly violates not only the Constitution but common sense. There is no 'objectively reasonable' reason why the town of Ansonia denied the Pauleys the right to petition the government for redress of their grievances.

Under Connecticut common law, municipalities are immune from negligence claims based on governmental acts or omissions involving the exercise of discretion or judgment, as opposed to a ministerial act. Elliot v. Waterbury, 245 Conn. 385, 411 (1998). Ministerial acts are performed in a prescribed manner without exercise of judgment or discretion as to the propriety of the action. Elliot at 411.

"A public official performing a governmental duty is immune from liability as long as he acts 'in good faith in the exercise of an honest judgment and not in the abuse of...discretion, or maliciously or wantonly....'" Wadsworth v. Middletown, 94 Conn. 435, 439 (1920). Under the doctrine of governmental immunity, there is a distinction made between ministerial and discretionary acts. 'A ministerial act, as opposed to a discretionary act, refers to [an act] which is to be performed in a prescribed manner without the exercise of judgment or discretion.' Roman v. Stamford, 16 Conn. App. 2213, 221 (1988). A municipal defendant will not be

shielded from liability for a negligently performed ministerial act, but he will generally be immune for a negligently performed discretionary act.  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 167-68 (1988).  '[T]he operation of a police department is a discretionary function.'  Id. at 179.  Failure to perform discretionary acts will create liability where the public officer's failure to act would likely subject an identifiable person to imminent harm, however.  Id. at 167....Whether the acts complained of are governmental or ministerial is a factual question.  Gauvin v. New Haven 187 Conn. 180, 186 (1982)."  Velez v. City of New London, 3:94CV2169(PCD) (U.S.D.C. D. Conn. 1999).  The determination of whether the act of  filing of a written civil complaint is a governmental or ministerial action is a factual question.

IV.  **Conclusion**

     For all the foregoing reasons, the court should deny the defendants requests granting them summary judgment as to claims directed against them in the plaintiffs' Complaint.

-16-

THE PLAINTIFFS


BY_____

          Kim Coleman Waisonovitz
          Law Offices of Norman A. Pattis LLC
          649 Amity Road, P.O. Box 280
          Bethel, CT 06524
          Telephone: 203.393.3017
          FAX: 203.393.9745
          Federal Bar No. ct25759
          Their Attorney


## CERTIFICATION

     This is to certify that a copy of the foregoing was sent via first class mail,

postage prepaid, on March 8, 2005, to the following counsel of record:

Beatrice Jordan, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114


_____
_____Kim Coleman Waisonovitz

-17-