Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 677285 (D.Conn.)
**(Cite as: 2005 WL 677285 (D.Conn.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Debra **LENNON,** Plaintiff,
v.
TOWN OF OLD SAYBROOK, Donald Hull, Brian Ziolkovski, Charles Mercer, Robert Mulvihill, and Larry Smith, Defendants.
No. Civ.A.3:03-CV-2029(JCH).

March 21, 2005.

Dawne Westbrook, Middletown, CT, for Plaintiff.

John J. Radshaw, III, Thomas R. Gerarde, Howd & Ludorf, Hartford, CT, for Defendants.

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]

HALL, J.

**\*1** Defendants Donald Hull, Brian Ziolkovski, Charles Mercer, Robert Mulvihill, Larry Smith (together the "Officers"), and the Town of Old Saybrook, Connecticut ("Old Saybrook") move for summary judgment pursuant to Fed. R. Civ. P. 56. The defendants argue that plaintiff Debra Lennon has failed to state a cause of action under either the First or Fourteenth Amendments to the United States Constitution as alleged in her Amended Complaint. Lennon opposes the summary judgment motion, claiming that material facts are in dispute concerning whether the defendants' actions relating to her alleged sexual assault violated her constitutional rights. For the reasons that follow, the defendants' motion for summary judgment is GRANTED.

I. BACKGROUND [FN1]

> FN1. The court's recitation of the facts is based on Lennon's pleadings and the admissions and statements of fact provided in her Rule 56(a)(2) statement.

Debra Lennon moved into a house in Old Saybrook, Connecticut that she leased with her boyfriend, Jon Marien, in October 2002. On November 3, 2002, Lennon and Marien became involved in an altercation at their residence. The altercation became physical, and Lennon sustained a split lip. Lennon called 9-1-1 from a neighbor's house. Sergeant McDonald and Officers David Perrotti and Brian Ziolkovski of the Old Saybrook Police Department were dispatched to the scene to investigate the situation. The police arrested both Lennon and Marien for disorderly conduct. Following the incident, restraining orders were entered against both Lennon and Marien, but the orders did not prevent the couple from continuing to live together.

On the morning of November 9, 2002, Lennon awoke to find Marien engaging her in non-consensual anal sex. Lennon began crying and begged Marien to stop. Marien refused to stop. Lennon sustained physical injuries as a result of the incident. Lennon and Marien did not see each other again until they met for dinner on the evening of November 10, 2005. After dinner, Lennon and Marien got into another altercation concerning phone calls Marien received from his ex-girlfriend and ex-wife. Lennon claims that Marien assaulted her during this altercation.

Following the altercation, Marien contacted the Old Saybrook Police Department. Officer Ziolkovski proceeded to Lennon's house with Marien. Ziolkovski encountered Lennon, who was wearing only her bra, underwear, and a blanket, and he instructed her to get dressed while he proceeded

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:01-cv-02224-CFD    Document 56-4    Filed 11/16/2005    Page 2 of 4

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 677285 (D.Conn.)

**(Cite as: 2005 WL 677285 (D.Conn.))**

outside to speak with Marien. Marien denied assaulting Lennon. Officer Ziolkovski contacted Sergeant Mulvihill, related the information as he understood it at the time, and Ziolkovski and Mulvihill decided Marien should be arrested for assault in the third degree and violation of a protective order. Ziolkovski brought Marien back to the Old Saybrook Police Station to be processed.

Patrolman Larry Smith was then dispatched to the scene to photograph Lennon's facial injuries. When Smith spoke to Lennon, she informed him that she had been both raped and beaten. Smith contacted Sergeant Hull, who had replaced Sergeant Mulvihill as Shift Commander, concerning Lennon's statements. Sergeant Hull dispatched both Police Detective Charles Mercer and an ambulance to the scene.

**\*2** When the ambulance arrived, Lennon refused to complete a rape kit, refused treatment at the scene, and refused to be taken to the hospital. Lennon indicated that she preferred to go to her own doctor in the morning. Lennon indicated that she did not want Marian arrested. At her deposition she stated that she said this because she was afraid.

Detective Mercer questioned Lennon at the scene about the sexual assault. She told Hull that the sexual assault occurred upstairs and that blood had been spilled on the bed, sheets, the toilet, her clothes, some towels and the staircase wall. When she showed Detective Mercer these items and areas, Mercer could not detect any signs of blood or discoloration. Lennon claimed that everything had been washed in the time since the assault. Mercer advised Sergeant Hull not to process Marien and that a follow up investigation would be the better course. Mercer stated that an arrest warrant could be procured if Lennon's story could be substantiated following the investigation.

Lennon went to the police station to confirm her complaint and make a written statement. Lennon claims that, while at the police station, she heard Marien laughing with police officers. She claims that Marien was known to the Old Saybrook Police Department because he had operated a towing garage in the vicinity for years, towed vehicles for the Town, and serviced the Officers' vehicles. According to Lennon, Sergeant Hull told her that she did not really want to pursue charges against Marien because Marien would likely lose his job and the charges would ruin Marien's life. Sergeant Hull also questioned Lennon concerning the sexual assault. Lennon became uncomfortable with the line of questioning directed towards her, including questions concerning her sexual history and how she knew that she had been raped, and refused to finish her statement. According to Lennon, she attempted to return later to finish her statement with a female officer, but was unable to do so. However, Lennon also admits that her verbal statements to the investigating officers contained inconsistencies concerning the events of the preceding evening and the sexual assault. Plaintiff's Local Rule 56(a)(2) Statement at ¶ 48.

Approximately ten minutes after Lennon left the police station, Marien was released. A case incident report was created concerning the incident, but formal charges were never filed against Marien. Lennon contacted the State's Attorney concerning the prosecution of Marien, but was told by the State's Attorney's Office that they could not prosecute Marien unless the Old Saybrook Police Department filed charges against him. Marien was never prosecuted.

II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See,* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d Cir.2000). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....' " *Miner v. Glen Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable

Case 3:01-cv-02224-CFD    Document 56-4    Filed 11/16/2005    Page 3 of 4

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2005 WL 677285 (D.Conn.)

**(Cite as: 2005 WL 677285 (D.Conn.))**

jury could return a verdict for the nonmoving party." ' *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson,* 477 U.S. at 248), *cert. denied,* 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

**\*3** The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. *See Securities & Exchange Comm'n v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Nor may she rest on the "mere allegations or denials" contained in her pleadings. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). *See also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

III. DISCUSSION

Lennon argues that the defendants' actions violated her constitutional rights. Specifically, Lennon argues that by failing to arrest and charge Marien in relation to the alleged physical and sexual assaults in question, the Officers and Old Saybrook have violated her Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection and her First Amendment right to access to the courts. The defendants deny these charges and cite, *inter alia, Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), for the proposition that Lennon has no cause of action based on their failure to prosecute a third party for a criminal offense. In fact, *Linda R.S.* raises the question of whether Lennon has standing to pursue her claims.

In order to have standing to pursue a claim, a plaintiff must demonstrate: (1) an injury in fact; (2) caused by the conduct complained of; (3) and that such injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Lerman v. Bd. of Elections in the City of New York,* 232 F.3d 135, 142 (2d Cir.2000). In this instance, the question facing the court is whether Lennon has suffered an injury in fact due to the decision by the Old Saybrook Police Department not to bring charges against Marien for physical and sexual assaults on Lennon. The essence of the standing injury requirement is that a plaintiff must "allege such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). To qualify as a constitutionally sufficient injury in fact, the asserted injury must be "concrete and particularized," as well as "actual or imminent, not 'conjectural' or 'hypothetical." ' *See Baur v. Veneman,* 352 F.3d 625, 632 (2d Cir.2003) (quoting *Lujan,* 504 U.S. at 560). The court must assess whether or not the injury "affect[s] the plaintiff in a personal and individual way," *id.* (quoting *Lujan,* 504 U.S. at 560), and ensure that the plaintiff's injury is not so abstract as to make the claim incapable of, or otherwise not suitable for, judicial resolution, *Id.* Furthermore, the injury must be "legally protected." *McConnell v. Fed. Election*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:01-cv-02224-CFD    Document 56-4    Filed 11/16/2005    Page 4 of 4

Not Reported in F.Supp.2d                                                          Page 4
Not Reported in F.Supp.2d, 2005 WL 677285 (D.Conn.)

**(Cite as: 2005 WL 677285 (D.Conn.))**

*Comm'n,* 540 U.S. 93, 227, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (quoting *Lujan,* 504 U.S. at 560).

**\*4** In *Linda R.S.,* the Supreme Court considered a Texas statute that made it a misdemeanor for a parent to fail to provide child support for any child or children under the age of eighteen. *See* 410 U.S. at 615. Texas courts consistently interpreted the statute to apply only to parents of legitimate children. *See id.* The plaintiff, Linda R.S., claimed that Richard D. was the father of her illegitimate child, that he had refused to pay any child support, and that the local district attorney had refused to prosecute Richard D. despite Linda having applied to him to do so because, in the district attorney's view, the statute did not apply to Richard. *See id.* at 615-16. Linda argued that this distinction "discriminate[d] between legitimate and illegitimate children without rational foundation and therefore violate[d] the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 616.

The Supreme Court held that it could not address the merits of her claim because Linda had not alleged a legally cognizable injury. *See id.* at 619. The Court held that, while Linda "no doubt suffered an injury stemming from the failure of her child's father to contribute support payments", the nexus between this injury and her claim was insufficient. *See id.* at 618. Linda's failure to receive child support did not stem directly from the statute's non-enforcement. *See id.* The result of enforcing the statute would be Richard's incarceration, not child support payments for Linda. *See id.* As the Court noted, "[t]he Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.* at 618-19 (citing, *inter alia, Younger v. Harris,* 401 U.S. 37, 42 (1971). "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619.

In this case, Lennon's bases all of her constitutional claims on the failure of Old Saybrook and the defendant Officers to bring charges against Marien for his actions. While the court recognizes that the charges Lennon brings against Marien represent grievous injuries to Lennon, these injuries, as with Linda's injury in *Linda R.S.,* are not the result of the defendants' failure to bring charges against Marien. As *Linda R.S.* makes clear, Lennon does not have standing to bring these constitutional claims against the defendants for failure to prosecute a third party. *See id.* Thus, the court finds that, even if Marien committed the assaults, Lennon does not have standing to pursue her constitutional claims against the Officers and Old Saybrook. The defendants' motion for summary judgment as to all counts in the Amended Complaint are granted.

IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [Dkt. No. 23] as to all counts of the Amended Complaint is hereby granted. The clerk is ordered to close the case.

**\*5** SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 677285 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:03cv02029 (Docket) (Nov. 25, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.